UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

―――――――――――

JON PAUL KEAN, # 210913,                    )
                                            )
                    Petitioner,             )
                                            )        Case No. 1:16-cv-993
v.                                          )
                                            )        Honorable Paul L. Maloney
DEWAYNE BURTON,                             )
                                            )
                    Respondent.             )
―――――――――――――――――――――――――――― )

## **REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.  Petitioner Jon Paul Kean is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility (DRF) in Carson City, Michigan. Following a jury trial in the Kalamazoo County Circuit Court, Petitioner was convicted of first-degree home invasion, MICH. COMP. LAWS § 750.110a(2), conspiracy to commit second-degree home invasion,[1] MICH. COMP. LAWS § 750.110a(3), possession of burglar's tools, MICH. COMP. LAWS § 750.116, and larceny in a building, MICH. COMP. LAWS § 750.360.  On May 18, 2009, the court sentenced Petitioner, as a habitual offender-fourth offense, MICH. COMP. LAWS § 769.12, to prison terms of 26

―――――――――――

[1] As explained fully below, the jury actually convicted Petitioner of conspiracy to commit first-degree home invasion; however, on Petitioner's appeal from the trial court's denial of Petitioner's motion for relief from judgment the appellate court vacated that conviction and remanded with instructions to enter judgment on a charge of conspiracy to commit second-degree home invasion.  Although the appellate court reduced the degree of the crime of which Petitioner was convicted, it left his sentence intact.

years, seven months to forty years, three months on each home invasion conviction, four years, one month to forty years on the possession of burglar's tools conviction, and two years, two months to fifteen years on the larceny conviction.

On August 8, 2016, Petitioner filed his habeas corpus petition raising the following grounds for relief:

I.    The trial court erred under Michigan law by striking an eyewitness expert who could offer relevant testimony helpful to show jurors circumstances, including a photographic lineup done improperly, that could have resulted in a mistaken identification, as it was influenced by post-event suggestion, and other factors affecting its reliability, and in so ruling, the judge did not exercise discretion and erred as a matter of law by not giving a proper reason to strike the expert, thereby violating Rules 103, 401, 403, 702, 703, and 704 of the Michigan Rules of Evidence, and Petitioner's right to present a defense under Michigan law, MICH. CONST. 1963 and U.S. CONST. amends. VI, VII, and XIV.

    A.    The trial court denied Petitioner a chance to make a pretrial offer of proof or lay a foundation to admit expert testimony before trial.  The court erred in striking the expert on the basis he could offer no relevant testimony. This pretrial ruling denied Petitioner a right to lay a foundation on which the expert could offer opinions in violation of MICH. R. EVID. 403, 702, and 704, and it violated due process.  The court erred in categorically excluding all expert identification testimony without a pretrial admissibility hearing and without ruling again on admission of expert testimony at trial.

    B.    The judge erred in relying on eyewitness testimony from a co-defendant's trial in striking a defense expert when Petitioner and his counsel were not able to be present.  The court erred in finding eyewitnesses at the co-defendant's trial could be relied on as a basis for finding no substantial risk of misidentification or undue suggestion.

    C.    The court should have found that eyewitness identification expert testimony must be allowed since the expert was qualified in a recognized field of science to help jurors by testifying on how factors affecting eyewitness reliability

-2-

relate to specific factors at issue in the case to focus jurors on essential aspects of reliability of eyewitness testimony outside the realm of common experience without invading the province of the jury to decide if the eyewitnesses are reliable.

II.    Exclusion of expert identification testimony denied Petitioner's due process clause and confrontation clause rights to present an expert to show unreliability of multiple eyewitnesses who conferred with each other and police after the crime and picked Petitioner out of a suggestive photo lineup where the expert could show jurors the defects in perception, memory, suggestion, and recall of eyewitness and where the expert was essential to present the defense.  The judge's striking of the expert was improperly based on strength of proofs of guilt which violated Petitioner's due process and confrontation clause rights under *Holmes v. South Carolina*, 547 U.S. 319, 330 (2006).

III.    Did striking the expert deny Petitioner the ability to present testimony this was a suggestive lineup?  If so, was such expert testimony essential to maintain a broader defense—namely, that police cast Petitioner within the net of suspicion and used suggestive identification methods, too hastily, based on his involvement in a prior home invasion that was charged and on which a jury acquitted him (in 2005) and that resulted in Petitioner's lawsuit against Detective Van Dyken?  Could jurors have viewed the suggestive lineup of procedure and post-event suggestion tainting the eyewitnesses recall based on Detective Van Dyken telling Deputy Rought of his strong suspicion Petitioner was involved?

IV.    Petitioner was denied effective assistance of his counsel when his attorney failed to present expert testimony at trial to show the court ways eyewitnesses can be unreliable in their identification testimony or be subject to suggestion.

V.    Trial court failed to assure that jurors could not see Petitioner shackled, denying him ability to have a fair trial and be presumed innocent, so error in striking the eyewitness expert was not harmless.

VI.    The prosecutor committed misconduct by injecting a false statement not supported by evidence at trial that directly discredited Petitioner's testimony, impinged on his alibi, constituted unsworn rebuttal testimony that bolstered the

prosecution's witness testimony and argument in violation of MICH. CONST. 1963, art. I, §§ 13, 17, 20; U.S. CONST. amends. V, VI, XIV.

VII.    The court violated Petitioner's rights when the court responded to questions from the jury during deliberations.  Petitioner's attorney objected that the wording/nature of the questions made it clear the jury was confused.  The court's response to the questions caused coercion, did not refer the jury back to the original instructions given, and failed to follow the Michigan Court Rules, denying Petitioner a fair trial.  MICH. CONST. 1963, art I, §§ 13, 17, 20; U.S. CONST. amends. V, VI, XIV.

VIII.    There was ineffective assistance of trial counsel for errors/admissions of not objecting to prosecutor's plain error Issue I, Issue I-B; failure to call two alibi witnesses that were listed; failure to call listed character witness; failure to insist on Petitioner's presence at a critical stage; failure to insist the court follow Michigan Court Rules during a critical stage, or *voir dire* the jury during a critical stage or when the jury was polled; failure to investigate Issue I-B; failure to cross examine the homeowner about previous home invasion at his residence to show bias; failure to call a Michigan State Police expert about lab report that would subject the prosecution's case to scrutiny concerning the "so called" burglary tool; failure to object to improper line of questions from prosecution to alibi witness, when the alibi was filed seven months prior to trial, denying Petitioner a defense. MICH. CONST. 1963, art I, §§ 13, 17, 20; U.S. CONST. amends. V, VI, VII, XIV.

IX.    Appellate counsel rendered ineffective assistance on Petitioner's direct appeal of right by not briefing issues correctly; failing to investigate Issue I-B, and instead raising a frivolous/inaccurate issue that misinformed the trial and appellate court at the new trial motion hearings, and on direct appeal; failing to research, identify issues in the motion for relief from judgment that could have been raised on direct appeal instead of the incorrect issue; failing to thoroughly read the transcripts as the judge/jury questions and answers were objected to by trial counsel as this is a "red flag" that an issue is present, and this denied Petitioner the right to effective assistance of counsel on his direct appeal of right.  MICH. CONST. 1963, Art I, §§ 13, 17, 20; U.S. CONST. amends. VI, XIV.

     X.     Petitioner was denied due process by misinformation in the presentence report and a false statement in the victim impact statement. Petitioner objected at sentencing and the court failed to correct the information, denying Petitioner due process. This requires the court to order a hearing. MICH. CONST. 1963, art I, §§ 13, 17, 20; U.S. CONST. amends. V, VI, XIV.

(Pet., ECF No. 1, PageID.13-17, 19, 22, 24, 27, 29, 32, 35, 39, 41.)

Respondent has filed an answer to the petition (ECF No. 5) stating that the grounds should be denied because they are procedurally defaulted or without merit. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are without merit. Accordingly, I recommend that the petition be denied.

## **Discussion**

### I.    **Proposed Findings of Fact**

On July 9, 2008, two people—Burglar 1 and Burglar 2—drove a truck up the driveway of Guy Bowman's home in Vicksburg, Michigan. (Trial Tr. I, ECF No. 6-8, PageID.975-76, 989, 1012.) They knocked on doors, but no one answered. (*Id.*, PageID.977, 1012.) Burglar 1 pried open a window screen and entered the home through a window. (*Id.*, PageID.978.) He located and opened a safe, removing two jewelry boxes, then left. (*Id.*, PageID.981, 1014, 1028-29, 1051-52.)

We know these details about the burglary because the house was occupied at the time. Two of Guy Bowman's children, Zachary and Hannah, were in the home. The two did not sit idly by as the burglar sought out valuables. They hid and called their dad. (*Id.*, PageID.985, 1013, 1082.) Mr. Bowman called a neighbor and asked him to investigate. (*Id.*, PageID.1046-47, 1082-83.)

Neighbor Ron Miller arrived at Guy Bowman's home while Burglar 1 was still in the home and Burglar 2 was acting as lookout.  He confronted Burglar 2, who provided nervous excuses for his presence.  (*Id*., PageID.1047-51.)  At about that time, Burglar 1 emerged from the home, jewelry boxes in hand.  (*Id*., PageID.1051-52.)  After that, another of Guy Bowman's children, Ryan, returned home from cross-county practice on his bicycle.  (*Id*., PageID.1024-26, 1057-60.)  The burglars hopped in the truck and left.  (*Id*., PageID.1052-53.)

Ron Miller provided the license plate number of the truck to the police.  (Trial Tr. II, ECF No. 6-9, PageID.1126.)  The police ran the plate and determined it belonged to John McLemore.  (*Id*.)  The police were aware that McLemore and Petitioner were brothers-in-law.  (*Id*., PageID.1141-42, 1189-90.)  They prepared two photo lineups—one for McLemore and one for Petitioner.  (Trial Tr. I, ECF No. 6-8, PageID.1098-1109.)  Zachary Bowman, Ryan Bowman, and Ron Miller separately picked Petitioner out of the photo lineups.  (Trial Tr. II, ECF No. 6-9, PageID.1127-31.)  They identified Petitioner as the person denominated Burglar 1 above.

The police arrested McLemore first.  He eventually led the police to an abandoned farm where police found the two jewelry boxes.  (*Id*., PageID.1131-36.)  The police arrested Petitioner on July 10, 2008.  (*Id*., PageID.1150-51.)  They found a black bag in the vehicle Petitioner was operating at the time of his arrest.  (*Id*., PageID.1151-59.)  The bag contained tools and gloves, including a pry bar.  (*Id*.)  Petitioner acknowledged that the bag and its contents were his, with the exception of the pry bar.  (Trial Tr. III, ECF No. 6-10, PageID.1286-89.)

The police later discovered that Petitioner had sold some jewelry at a coin shop in Lansing just a couple of hours after the burglary.  (Trial Tr. II, ECF No. 6-9, PageID.1162-65.)  Guy Bowman testified that jewelry pieces Petitioner sold were pieces that were taken from his home.  (Trial Tr. I, ECF No. 6-8, PageID.1089-1091, 1094-1096.)

John McLemore was tried first, a month before Petitioner.  The jury convicted McLemore of first-degree home invasion and larceny in a building; the jury acquitted him of conspiracy to commit first-degree home invasion.  *People v. McLemore*, No. 292331, 2010 WL 3660211 (Mich. Ct. App. Sept. 21, 2010).  McLemore's inculpatory statements to police and the unequivocal identifications of McLemore by the Bowman boys and Miller provided ample support for the jury's verdict.  (*Id.*)

Petitioner intended to offer an alibi defense—he claimed he was with relatives in Lansing at the time of the crime—and attack the eyewitness identifications with expert testimony regarding the fallibility of such identifications and specific problems with the photo lineups.  The trial court refused to permit the expert testimony.  The court compared the identification testimony in the McLemore trial to the expert's affidavit describing the general concerns attendant to the reliability of eyewitness identifications, and it concluded that the expert testimony would not assist the trier of fact to understand the evidence. (Trial Tr. I, ECF No. 6-8, PageID.824-37.)

Petitioner's alibi was supported by the testimony of his girlfriend, Virginia Serna, and her relatives.  Petitioner's girlfriend's niece, Vera Gelista, testified that Petitioner had taken her and her aunt to court in Lansing that morning and that the

niece was entering a plea at about the same time the burglary occurred.  Thereafter, Petitioner and family members enjoyed a barbeque at the girlfriend's home in Lansing.  (Trial Tr. II, ECF No. 6-9, PageID.1200-10, 1228-36.)  The prosecutor challenged the alibi testimony by introducing court records indicating that Ms. Gelista had entered her plea on a different date: July 14, not July 9.  (*Id.*, PageID.1207-08, 1234-36.)

Petitioner acknowledged selling jewelry, but claimed it was not the Bowman's jewelry.  (Trial Tr. III, ECF No. 6-10, PageID.1291-92.)  Petitioner's argument also questioned whether the distance between Vicksburg and Lansing would have rendered it impossible for Petitioner to be in Vicksburg at the time of the robbery and Lansing at the time the jewelry was pawned.  (*Id.*, PageID.1322-23.)[2]  The jury was apparently not swayed by Petitioner's argument.

Petitioner's mother retained counsel for Petitioner's appeal.  Retained counsel moved for a new trial on several issues, but principal among them was the trial court's refusal to allow testimony from Petitioner's eyewitness identification expert.  The trial court heard evidence and argument on the motion.  (Hr'g Trs., ECF Nos. 6-12, 6-13.)  Petitioner's putative expert, Dr. Solomon Fulero, submitted an affidavit in support of the motion based on his review of the trial transcripts.  (ECF No. 6-14,

---

[2] Petitioner's counsel argued that the robbery occurred at 11:00 a.m.  (Trial Tr. III, ECF No. 6-10, PageID.1322-23.)  But there is no record testimony to that effect.  Counsel's assertion appears to be based on the "established" times of the police response less the victim's estimates of the times between the event and the police response.  Ron Miller's testimony, however, suggested that he arrived at the Bowman house around 10:00 a.m.  (Trial Tr. I, ECF No. 6-8, PageID.1050.)

PageID.1752-67.)  In this post-trial affidavit Dr. Fulero tied his anticipated expert testimony regarding the eyewitness identifications to the facts and circumstances surrounding those identifications as they were elicited at trial.  (*Id.*)  Thus, the connection between Dr. Fulero's testimony and the facts of the case—the relevance of Dr. Fulero's testimony—that the trial court found lacking in Dr. Fulero's pretrial affidavit was remedied.  Nonetheless, the court denied relief because it was simply too late for a motion for reconsideration of his earlier order.  (Hr'g Tr., ECF No. 6-13, PageID.1595.)

On December 1, 2011, the Michigan Court of Appeals issued its opinion affirming the trial court with respect to the five issues Petitioner had raised (Issues I-V above).  (Op., ECF No. 6-14, PageID.1620-26.)  Petitioner filed a *pro per* motion seeking reconsideration.  That motion was denied on January 24, 2012.  (Order, ECF No. 6-14, PageID.1771.)  Petitioner then sought leave to appeal in the Michigan Supreme Court.  That court denied leave and denied Petitioner's motion for reconsideration.  (ECF No. 6-15, PageID.1772; ECF No. 6-17, PageID.2016.)

On May 23, 2013, Petitioner filed a motion for relief from judgment in the trial court raising issues VI-X above.  (ECF No. 6-18.)[3]  The trial court denied relief on all issues.  (ECF No. 6-20.)

The Michigan Court of Appeals denied leave to appeal on all issues, except one. On August 4, 2015, the appellate court issued its opinion vacating the trial court's

---

[3] Petitioner raised another issue as well.  He claimed his sentences were disproportionate to the crimes.  (ECF No. 6-18, PageID.2022.)  He abandoned that issue on appeal (ECF No. 6-21, PageID.2155.) and has not raised it in his petition.

denial of Petitioner's motion for relief from judgment with respect to the conspiracy issue, vacating Petitioner's conviction of conspiracy to commit first-degree home invasion, and remanding to the trial court for entry of a conviction of conspiracy to commit second-degree home invasion instead.  (Op., ECF No. 6-21.)  The appellate court concluded that the change would not impact Petitioner's sentence.  (*Id.*, PageID.2146.)

Petitioner then sought relief in the Michigan Supreme Court regarding the court of appeals' initial denial of his application for leave to appeal on the non-conspiracy issues, and challenging the court of appeals' resolution of the conspiracy issue.  That court denied relief by order issued May 24, 2016.  (ECF No. 6-36, PageID.2614.)

On July 14, 2016, the Kalamazoo County Circuit Court entered an amended judgment of sentence.  (ECF No. 6-1, PageID.648-49.)  Petitioner subsequently filed this petition.

## II.    AEDPA Standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529

U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.    Eyewitness Identification Expert Testimony (Habeas Issues I, II, III, and IV and parts of Issues VIII and IX)

Petitioner offers many different challenges to the trial court's decision to exclude the testimony of his eyewitness identification expert.  Petitioner claims that counsels' performances with respect to this issue, both at the appellate and trial levels, constituted ineffective assistance.  He contends that excluding the testimony denied him due process and the right to confrontation.  Petitioner argues that the

court denied him the right to present a defense.  He also maintains that the court denied him and his counsel the right to be present during a critical stage of the criminal proceedings by relying on testimony from the McLemore trial where neither Petitioner nor his counsel were present.

The Michigan Court of Appeals rejected Petitioner's challenges, no matter how they were presented.  It considered the standards for admissibility of scientific testimony outlined by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993) and the trial court's obligation under Rule 702 of the Michigan Rules of Evidence to " 'ensure that any expert testimony admitted at trial is reliable.' "  (Op., ECF No. 6-14, PageID.1621) (quoting *Gilbert v. DaimlerChrysler Corp.*, 685 N.W.2d 391, 408 (Mich. 2004).)  Dr. Fulero, Petitioner's proposed expert witness, offered an outline of the testimony he planned to provide at trial.  The appellate court found that the factors listed in Dr. Fulero's outline had not been connected to the facts of Petitioner's case:

> Neither Dr. Fu[ler]o nor defense counsel [] informed the trial court whether any of the factors impacting eyewitness identification evidence set forth in the outline actually implicated the facts of the instant case. Dr. Fulero's affidavit included no salient facts from the instant case upon which his testimony would focus.  Neither Dr. Fulero nor defense counsel ever described a connection between the information outlined in the affidavit and the facts of the case.  This significant omission supported the judge's ruling that the defense failed to establish that the proposed expert's testimony was relevant to the case at hand and therefore not likely to assist the trier of fact in resolving any relevant issue in the case.

(*Id.*, PageID.1623.)

The Michigan Court of Appeals observed that in *General Electric Company v. Joiner*, 522 U.S. 136 (1997), the Supreme Court noted that an "analytical gap" may separate case data and an expert's opinion:

> Trained experts commonly extrapolate from existing data.  But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

(Op., ECF No. 6-14, PageID.1623) (quoting *Joiner*, 522 U.S. at 146.)  "Because Dr. Fulero's non-specific affidavit lacked any reference to the identifications made by the eyewitnesses in this case, a yawning void separated the affidavit from the eyewitness identification evidence." (*Id.*).  The trial court did not abuse its discretion in excluding this evidence because Petitioner "failed to explain how Dr. Fulero's testimony could enhance the ability of [Petitioner's] jury to perform its fact-finding role[.]" (*Id.*, PageID.1623-24.)  "[T]he trial court fulfilled its gate keeping function" under Rule 702 of the Michigan Rules of Evidence and its ruling "was based on an appropriate consideration:  whether the testimony would be helpful or confusing to the jury." (Op., PageID.1624) (quotation omitted.)

The Michigan Court of Appeals found "no indication that [Petitioner's] convictions were the result of a fundamentally unfair trial." (*Id.*, PageID.1624-25.)

A.    <u>State Law Issues</u>

In presenting his issues in this Court, Petitioner simply repeats them as they were raised in the state courts.  A number of these issues implicate state law and state rules of procedure.  As such, they are not cognizable on habeas review.

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  The federal courts have no power to intervene on the basis of a perceived error of state law.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68.  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  Thus, this Court is bound by the state courts' determinations that the testimony of Dr. Fulero was not admissible under Michigan Rule of Evidence 702.

B.    Exclusion of Evidence as a Constitutional Violation

The trial court's decision to exclude the expert's testimony, presented as a violation of the state rules of evidence, is the sort of state law decision that is not cognizable on habeas review.  As the Supreme Court explained in *Estelle*, 502 U.S. at 62, an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction" because "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  *Id.* at 67-68.  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id.* at 68.

State-court evidentiary rulings cannot rise to the level of a due process violation unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *See Wilson v. Sheldon*, 874 F.3d 470, 475-76 (6th Cir. 2017); *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000). Petitioner cannot meet this difficult standard.

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).

There are several Supreme Court cases that provide some general conceptual support for Petitioner's argument. In *Crane v. Kentucky*, 476 U.S. 683 (1986), the Court concluded that the United States Constitution guarantees criminal defendants "a meaningful opportunity" to present a complete defense. *Id*. at 690. A central component of that guarantee is the right to offer the testimony of witnesses. *Taylor v. Illinois*, 484 U.S. 400, 409 (1988). Other components include the right to confront and cross-examine witnesses, *Delaware v. Fensterer*, 474 U.S. 15, 18-20 (1985), and the right to the effective assistance of from counsel, *Gideon v. Wainwright*, 372 U.S. 335, 343-45 (1963).

Petitioner focuses on *Holmes v. South Carolina*, 547 U.S. 319 (2006), as the Supreme Court authority to which the Michigan appellate court's determinations are contrary.   In *Holmes*, the Supreme Court rejected the South Carolina Supreme Court's reasoning when that court held " 'where there is strong evidence of an appellant's guilt, especially when there is strong forensic evidence, the proffered evidence about a third party's alleged guilt does not raise a reasonable inference as to the appellant's own innocence.' " *Holmes*, 547 U.S. at 324 (quoting *State v. Holmes*, 605 S.E.2d 19, 24 (S.C. 2004)).  Although the Supreme Court rejected that particular rule, it also recognized that "well-established rules of evidence [that] permit trial judges to exclude evidence" under certain circumstances are unlikely to violate a defendant's constitutional rights.  547 U.S. at 326.

In *United States v. Scheffer*, the Supreme Court laid out an analytical path for consideration of a claim such as Petitioner's:

> A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions.  *See Taylor v. Illinois*, 484 U.S. 400, 410 (1988); *Rock v. Arkansas*, 483 U.S. 44, 55 (1987); *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973).  A defendant's interest in presenting such evidence may thus "'bow to accommodate other legitimate interests in the criminal trial process.'"  *Rock, supra*, at 55 (quoting *Chambers, supra*, at 295); *accord, Michigan v. Lucas*, 500 U.S. 145, 149 (1991).  As a result, state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials.  Such rules do not abridge an accused's right to present a defense so long as they are not "arbitrary" or "disproportionate to the purposes they are designed to serve."  *Rock, supra*, at 56; *accord, Lucas, supra*, at 151.  Moreover, we have found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused.  *See Rock, supra*, at 58; *Chambers, supra*, at 302; *Washington v. Texas*, 388 U.S. 14, 22-23 (1967).

523 U.S. 303, 308 (1998) (footnote omitted).

Moreover, even if the exclusion of evidence is arbitrary, disproportionate, and infringes upon a weighty interest of the accused, habeas relief is unwarranted if the error is harmless under *Brecht v. Abrahamson,* 507 U.S. 619 (1993).  *See Neder v. United States*, 527 U.S. 1, 18 (1999) ("[T]he erroneous exclusion of evidence in violation of the right to confront witnesses guaranteed by the Sixth Amendment [is]subject to harmless-error analysis[.]") (citation omitted).

Petitioner's attempt to link his eyewitness identification reliability expert claim to the general concepts discussed in the above-cited Supreme Court cases is unavailing.  Those cases do not clearly establish that a trial court's exclusion of expert testimony about the reliability of eyewitness identification is constitutionally infirm.

In *Thomas v. Heidle*, the Sixth Circuit reviewed the various Supreme Court decisions and concluded they did not clearly establish that excluding such expert testimony violated the Due Process, the Compulsory Process, or the Confrontation clauses.  615 F. App'x 271, 282-83 (6th Cir. 2015).  The Sixth Circuit acknowledged, however, that its own decision in *Ferensic v. Birkett*, 501 F.3d 469 (6th Cir. 2007)—a case upon which Petitioner heavily relies—might support the argument raised by Petitioner here.  *Thomas*, 615 F. App'x at 280-82.  Under the AEDPA, however, that is insufficient.  "The clearly established law to be considered under AEDPA only extends to law that the Supreme Court—not this court—has announced."  *Id*. at 280.  Because Petitioner cannot show that the state courts' determinations excluding, or upholding the exclusion of, the eyewitness identification reliability expert's testimony

is contrary to, or an unreasonable application of, clearly established federal law announced by the Supreme Court, he is not entitled to habeas relief on his claims.

## IV.    Shackles (Habeas Issue V)

Petitioner was shackled during his trial.  He claims that his constitutional rights were violated because the jurors saw that he was shackled.  The trial court and the Michigan Court of Appeals rejected Petitioner's claim as factually unsupported:

> In this case, the trial court found and the record supports there is no indication that any juror observed the shackles on defendant's legs.  On appeal, defendant misrepresented the record by concluding that "[t]he testimony and argument [at the motion for new trial hearing] leaves doubt about whether jurors saw [defendant] in shackles."  We disagree, and conclude that defendant failed to demonstrate prejudice.

(Op., ECF No. 6-14, PageID.1626.)

The visible use of physical restraints on a criminal defendant might violate three fundamental legal principles:  (1) the presumption of innocence; (2) an accused's ability to secure a meaningful defense by assisting counsel; and (3) the maintenance of a dignified and decorous judicial process.  *Deck v. Missouri*, 544 U.S. 622, 630-32 (2005).  The Supreme Court concluded that the risk to those rights required courts to evaluate the circumstances of the particular case before permitting the use of visible restraints.  *Id.* at 632.

No such individualized evaluation occurred before restraints were imposed on Petitioner.  The trial judge acknowledged that he permitted the restraints to be used routinely because they were not visible.  Both the judge's decision—to routinely permit the use of restraints that were not visible—and the court of appeals' determination—that no prejudice can be shown if the shackles were not visible to the

-19-

jury—are entirely consistent with the clearly established federal law set forth in *Deck. See, e.g., Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 842 (6th Cir. 2017) ("[V]isible' marks the key inquiry for us because a claim based on *Deck* rises or falls on the question of whether the [restraint] was visible to the jury.") (citation and quotation omitted); *Mendoza v. Berghuis*, 544 F.3d 650, 655 (6th Cir. 2008) ("Mendoza's restraints were not visible to the jury during trial" and the clearly established precedent upon which he relies—namely *Deck*—is expressly limited to cases where the defendant's shackles *are* 'visible to the jury' during trial.") (quoting *Deck*, 544 U.S. at 629).

The state courts' analyses of Petitioner's shackling is neither contrary to, nor an unreasonable application of *Deck*, the clearly established federal law on the shackling issue.  Moreover, Petitioner has failed to present any evidence, much less clear and convincing evidence, to overcome the presumption of correctness that this Court must afford the state court's finding of fact regarding the visibility of Petitioner's shackles to the jury.  *See* 28 U.S.C. § 2254(e)(1).  Petitioner has not identified any evidence in the record showing that his restraints were seen by the jurors.  Thus, the state court's determination that the shackles were not visible was eminently reasonable.  Petitioner is not entitled to habeas relief on his shackling claim.

## V.    Prosecutorial Misconduct (Habeas Issue VI)

A prosecutor is not limited to simply recounting the evidence during closing argument.  He may also argue reasonable inferences from the evidence.  *Byrd v.*

*Collins*, 209 F.3d 486, 535 (6th Cir. 2000).  Nonetheless, it is improper for a prosecutor

"to bring to the attention of the jury any purported facts that are not in evidence and

are prejudicial."   *Id.*   (citation and quotation omitted).   Petitioner attacks the

prosecutor's closing, claiming that he misrepresented the testimony of his girlfriend.

> The objectionable argument, in context, reads as follows:

> I'd submit to you that the testimony you have of Ron Miller and Ryan
> and Zac Bowman is enough for you to convict in this case.  But that is
> not the only evidence you have.  If you believe those witnesses alone,
> that's enough for conviction but you have more evidence than that.  You
> have the fact that the defendant pawned the stolen jewelry that day in
> Lansing.  Now, he took the stand and tells you it's his jewelry and his
> girlfriend's.  *His girlfriend testified she never ID'd anything.*  Guy
> [Bowman] could tell you what some of these things were and why they
> were significant.  There was class ring he talked about.  He talked about
> a red stone that he had been given—or a ring with a red stone that had
> been his father's.  His father used to wear it and it had been given to
> him.  And he talked about the significance of one of the necklaces he had
> purchased for his wife.

> We know the defendant is the one who pawn—sold this jewelry.  We
> know that because of the form that he filled out and the thumb print
> evidence and also because he took the stand and admitted as much.
> The—Guy Bowman identified that jewelry as belonging to him.  We
> know his jewelry boxes were stolen.  The jewelry was pawned the same
> day that this incident occurred.

(Trial Tr. III, ECF No. 6-10, PageID.1310-11) (emphasis added).

> The italicized sentence is the purportedly false information.   Petitioner

contends it is false because he reads the sentence like this:  "His girlfriend testified

[that] she never ID'd anything."  This interpretation suggests that the girlfriend told

the jurors that she had never identified any of the pawned jewelry as her own.  Review

of the girlfriend's testimony reveals that she never so testified.

There is another interpretation of the argument that is contextually accurate and more consistent with the testimony:  "His girlfriend testified[;] she never ID'd anything."  Read that way, the argument is a comment on the defense's failure to have the girlfriend confirm Petitioner's testimony that the pawned jewelry, otherwise unknown to him, was, indeed, hers.  That omission stands in stark contrast to the testimony of Guy Bowman who identified the specific pieces of jewelry recovered as belonging to him or his wife.

The trial court rejected Petitioner's argument because the prosecutor did "nothing more than comment[] on the evidence as it pertained to her theory of the case."  (Op. and Order, ECF No. 6-20, PageID.2135.)  The court adopted the commonsense reading of the quoted argument rather than the interpretation urged by Petitioner.  The trial court's factual determination is eminently reasonable and compels the rejection of Petitioner's prosecutorial misconduct argument as factually baseless.

In rejecting Petitioner's claim, the trial court reasoned that, if the argument were factually improper, any possible prejudice would have been cured when the court instructed the jurors that statements and arguments by the lawyers were not evidence.  (*Id*.)  It is clearly established federal law that "[a] jury is presumed to follow its instructions."  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).  Accordingly, whether or not the prosecutor overstepped the bounds of permissible argument here, the trial court's rejection of Petitioner's claim is neither contrary to, nor an unreasonable

application of, clearly established federal law.  Petitioner is not entitled to habeas relief.

## VI.    Jury Instructions Regarding Conspiracy (Habeas Issue VII)

Petitioner's challenge to the jury instructions regarding conspiracy to commit first-degree home invasion starts out on solid ground.  During deliberations, the jury asked if they had to find that Petitioner agreed with another to invade the home knowing someone was inside, or if it were sufficient to find that Petitioner agreed with another to invade the home and it turned out that someone was inside.  The trial court informed the jury that the latter finding was sufficient to support a conviction for conspiracy to commit first-degree home invasion.

The Michigan Court of Appeals concluded that the trial court's response to the jury's question was plain error.  The appellate court reversed Petitioner's conviction for conspiracy; but the court did not stop there.  It directed the trial court to enter a judgment of conviction for conspiracy to commit second-degree home invasion.  The court of appeals reasoned that, because "[k]nowledge of the home's occupancy [was] the only element that distinguishes first-degree home invasion . . . from second-degree home invasion[,]" the court actually instructed on, and the jury effectively found Petitioner guilty of, conspiracy to commit second-degree home invasion.  (Op., ECF No. 6-21, PageID.2146.)

All of the problems that Petitioner identifies with respect to the trial court's instruction to the jury regarding conspiracy to commit first-degree home invasion have been remedied by the state appellate court's vacation of Petitioner's conspiracy

conviction.  The only issue left to contest is the appellate court's direction that the trial court enter judgment against Petitioner for conspiracy to commit second-degree home invasion.  Petitioner contends that the entry of that conspiracy conviction violated his constitutional rights.

The current version of Petitioner's claim contends that the jury was not properly instructed on conspiracy to commit second-degree home invasion.  (Reply Br., ECF No. 11, PageID.3492-93.)  Despite that shift in focus, Petitioner continues to rely on authorities that require that the jury be instructed on, and find the defendant guilty beyond a reasonable doubt on, all elements of the crime.

The Due Process Clause requires that every element of the charged crime be proven beyond a reasonable doubt.  *In re Winship*, 397 U.S. 358, 364 (1970).  When a jury is not properly instructed with regard to the elements of the charged crime, the due process right to proof beyond a reasonable doubt is implicated.  *Sandstrom v. Montana*, 442 U.S. 510 (1979).  It is the prerogative of the state to define the elements of the crime, and the federal courts are bound by their determination.  *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979) ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses.  Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.").

-24-

In this case, the state court of appeals has stated that the elements of conspiracy to commit first-degree home invasion and conspiracy to commit second-degree home invasion differ in only one respect: knowledge that the dwelling is occupied. That is the element the trial court effectively omitted. Thus, the instructions that were given were, for all intents and purposes, instructions on the elements of conspiracy to commit second-degree home invasion. Accordingly, Petitioner's due process challenge to the instructions has no merit.

Additionally, Petitioner argues that the court of appeals, having identified a fatal flaw in the trial court's instructions regarding conspiracy to commit first-degree home invasion, could not constitutionally fashion the remedy of entering judgment on conspiracy to commit second-degree home invasion. Petitioner offers no clearly established federal law to support that position, however. In fact, circuit court authority indicates that Petitioner is simply wrong.

In *Glenn v. Dallman*, 686 F.2d 418 (6th Cir. 1982), the Sixth Circuit took the same remedial step in virtually identical circumstances. In *Glenn*, the trial court instructed the jury regarding the charge of aggravated burglary; but the court erroneously omitted the requirement that a person was either present or likely to be present in the burgled structure. *Id*. at 419. The Sixth Circuit concluded that the trial court's omission rendered the aggravated burglary conviction constitutionally infirm. The court reversed and remanded with directions that the conviction be reclassified to simple burglary because "[t]he instruction given by the trial judge fairly stated the essential elements of burglary . . . [thus, t]he jury in the present case

was instructed on the essential elements of burglary and returned a verdict of guilty under those instructions." *Id.* at 423.

Petitioner has failed to demonstrate that the Michigan Court of Appeals' resolution of his jury instruction challenge is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, he is not entitled to habeas relief.

## VII. False Information at Sentencing (Habeas Issue X)

Petitioner contends that he was denied due process at sentencing because the Presentence Investigation Report (PSIR) included misinformation, and the victim impact statement submitted by Guy Bowman included false statements.[4] A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980) To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *See United States v. Tucker*, 404 U.S. 443, 447 (1972); *see also Koras*

---

[4] The trial court and the Michigan Court of Appeals would not consider this claim because Petitioner had failed to raise it on direct appeal and had failed to show cause for that failure to resulting prejudice. (ECF No. 6-20, PageID.2140; ECF No. 6-36, PageID.2619.) "If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention – whether in trial, appellate, or habeas proceedings, as state law may require – procedural default will bar federal review." *Magwood v. Patterson*, 561 U.S. 320, 340 (2010). Nevertheless, the U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law.")

*v. Robinson,* 123 F. App'x 207, 213 (6th Cir. 2005) (applying this standard in the context of a habeas corpus petition brought under 28 U.S.C. § 2254).  A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence.  *Tucker*, 404 U.S. at 444, 447.

Here, even if the PSIR and victim impact statement were false, Petitioner could not prevail because he cannot show that the trial court relied on the information contained in those documents to score Petitioner's sentence.  The trial court entirely rejected the PSIR scoring of the Prior Record Variables and Offense Variables and ordered it removed from the document because the court had "made a very lengthy record as to why we scored certain PRVs and OVs in a certain way and [the investigator's] scoring of that is really irrelevant with the record that we've just made[,] so all that is stricken."  (Sentencing Tr., ECF No. 6-11, PageID.1392.)

The court did not strike the victim impact statement.  Under Michigan statute, the victim is entitled to submit such a statement as part of the presentence investigation.  *See* Mich. Comp. Laws §§ 771.14, 780.764.  The trial court explained that right at Petitioner's sentencing:

> It's a preprinted victim impact statement form from the Prosecutor's Office.  I cho[o]se not to amend that in any way.  This is the statement of Mr. Bowman.  What he wishes to say and what it's based on, that's up to him, completely[,] so the objection is noted and it's overruled.

(Sentencing Tr., ECF No. 6-11, PageID.1385-86.)    But, even if Mr. Bowman's statements were false, the Sentencing Transcript discloses that the court reviewed

the scoring on each variable with counsel's input and, where the court relied on facts

other than those presented at the hearing, he made clear that he derived those facts

from the trial record, not the victim impact statement—or the PSIR.   (*Id.*,

PageID.1374-83 .)[5]  Because Petitioner has failed to show that the trial court relied

on the information Petitioner claims is false, he is not entitled to habeas relief on his

sentencing due process claim.

### VIII.  Ineffective Assistance of Trial Counsel (Habeas Issue VIII)

Petitioner  claims  his  counsel  rendered  ineffective  assistance  because  of

numerous failures before trial and at trial.  In *Strickland v. Washington*, 466 U.S.

668, 687-88 (1984), the Supreme Court established a two-prong test by which to

evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective

assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell

below  an  objective  standard  of  reasonableness;  and  (2)  that  counsel's  deficient

performance prejudiced the defendant resulting in an unreliable or fundamentally

unfair outcome.  A court considering a claim of ineffective assistance must "indulge a

strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance."  *Id.* at 689.  The court must determine whether, in light of

the circumstances as they existed at the time of counsel's actions, "the identified acts

---

[5] It is possible that the trial court relied on the victim's statement with regard to the restitution amount; but a claim about restitution is not amenable to habeas relief, which concerns only custody.  *See Washington v. McQuiggin*, 529 F. App'x 766, 773 (6th Cir. 2013) ("In general, fines or restitution orders fall outside the scope of the federal habeas statute because they do not satisfy the 'in custody' requirement of a cognizable habeas claim.").

or omissions were outside the wide range of professionally competent assistance." *Id.* at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *see Carter v. Bogan*, 900 F.3d 754, 774 (6th Cir. 2018).

The trial court applied the Strickland standard and rejected all Petitioner's claims of ineffective assistance of trial counsel:

> Defendant argues his trial counsel was ineffective because he failed to object to a prosecutor's question of his alibi witness, to call certain witnesses to testify, and to present a forensic report and/or the "expert" who authored the report to testify regarding the result of a comparison of the pry bar found in Defendant's possession and the damage to the victims' screen and window casing.  This Court has reviewed the arguments and supporting materials Defendant argues show ineffective assistance of counsel, but does not find that Defendant has successfully rebutted the presumption that these decisions were anything other than sound trial strategy.  Specifically, this Court finds that trial counsel's decision not to object to the prosecutor's question was based on the fact that such an objection would have been futile because the prosecutor's line of questioning was appropriate.  The Court does not find that Defendant has shown that the witnesses he argues counsel should have called would have provided testimony to change the outcome of the trial. Finally, the report Defendant argues trial counsel should have presented was inconclusive, so the Court finds that it was sound trial strategy for counsel to refrain from introducing such an inconclusive

report. . . .  Having concluded that trial counsel's decisions were based on sound trial strategy, this Court finds Defendant's argument of ineffective trial counsel meritless and that relief from judgment is not appropriate on those grounds.

(Op. and Order, ECF No. 6-20, PageID.2138-39.)

Petitioner has not demonstrated that the trial court's determinations were "contrary to" clearly established federal law.

The Sixth Circuit has held that " 'counsel cannot be ineffective for a failure to raise an issue that lacks merit.' " *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (quoting *Greer v Mitchell*, 264 F.3d 633, 676 (6th Cir.2001)).  "Omitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).  Accordingly, to the extent Petitioner contends his counsel was ineffective for failing to raise the issues identified above as meritless (under state law or federal constitutional law), his ineffective assistance claim fails under both prongs of the *Strickland* analysis.  Similarly, the trial court's conclusion that there was no merit to the Petitioner's proposed objection to the prosecutor's questioning of Petitioner's girlfriend is fatal to his ineffective assistance claim.  (Op. and Order, ECF No. 6-20, PageID.2139.)

Two of counsel's decisions were mentioned by the trial court, but not addressed above: counsel's decision to not call Petitioner's girlfriend's grandchildren as additional alibi witnesses and counsel's decision to not introduce into evidence the report of the Michigan State Police lab's analysis regarding the pry bar.  The trial court concluded that counsel's failure to call the minor grandchildren was not prejudicial—the court determined the omitted testimony would not have changed the

outcome of the trial.  With regard to the lab report, the court determined it was sound trial strategy to not seek admission of the report because it was inconclusive.  The court's determinations with respect to both issues represent reasonable applications of *Strickland*.

Petitioner's alibi placed him waiting outside the district courthouse in Lansing at the time the home invasion occurred.  Thereafter, Petitioner claimed he went to his girlfriend's house, grabbed the jewelry, and went to the coin store to sell it. Petitioner said he took his girlfriend's grandchild Andres Perez with him when he went to the coin store.

As part of Petitioner's motion for relief from judgment, he filed an affidavit purportedly signed by Andres Perez.  (ECF No. 6-29, PageID.2347.)  The affidavit indicates that the minor went with Petitioner to the coin store; but it does not provide any first-hand testimony regarding Petitioner's whereabouts at the time of the robbery, nor does it explain the source of the jewelry.  Petitioner also filed an affidavit purportedly signed by Darian Perez. (*Id.*, PageID.2348.)  That affidavit indicates that Darian saw Petitioner and Andres leave and then return at 1:00 p.m.  That affidavit says nothing about Petitioner's whereabouts at the time of the robbery, nor does it identify the source of the jewelry sold.

The affidavits, along with the accompanying affidavit of Petitioner's girlfriend, appear to have been signed almost five years after the date of the July 9, 2008, events forming the basis of Petitioner's criminal convictions.  (*Id.*, PageID.2346.)  The affiants are specific about the time—Andres indicates they went to Frandor Mall at

noon, Darian indicates the two returned at 1:00 p.m.  Although Petitioner argues that he testified the Liberty Coin transaction took place at noon, his testimony was actually far less specific:  "I think it was around lunchtime[.]"  (Trial Tr. III, ECF No. 6-10, PageID.1284.)  Petitioner's testimony was about as specific as the testimony from the Liberty Coin employee:  "Time wise, I would want to say around lunch time, possibly between 10:30 and 1:00, possibly."  (Trial Tr. II, ECF No. 6-9, PageID.1181.)  For the minors to provide sworn testimony with such pinpoint accuracy with regard to timing, five years after the fact, when Petitioner could not do so at his trial, is remarkable.  Even that specificity, however, does not provide an alibi for the time of the robbery.[6]  Only the testimony of Virginia Serna, Vera Gelista, and Petitioner covered that time period.  The jury apparently did not believe that testimony.

Moreover, counsel may have been concerned when the testimony of Serna's daughter Victoria did not match up to the story Serna had told police.  A month before trial, Serna told Kalamazoo County Sheriffs Department Deputy Jeff Baker that Darian and Andres were in the care of Victoria while Serna, Vera, and Petitioner went to the courthouse.  (ECF No. 6-32, PageID.2477.)  Victoria testified, however, that she was at work and did not arrive at the home until 2:00 p.m.  (Trial Tr. II, ECF No. 6-9, PageID.1221.)

---

[6] Petitioner suggests that the robbery occurred at 10:50 a.m.; but the testimony of the witnesses indicated that it occurred earlier.  Ron Miller testified that it was "right around 10 in the morning."  (Trial Tr. I, ECF No. 6-8, PageID.1050.)  If the robbery occurred around 10:00 a.m., the testimony of Andres and Darian, no matter how credible it is, does nothing to exculpate Petitioner.

Under the circumstances, counsel's decision to not pursue the testimony of Darian and Andres does not appear to be professionally unreasonable.  Moreover, the trial court's determination that the jury would not find the grandchildren's peripheral testimony sufficient to affect the verdict is eminently reasonable.

The trial court's assessment of the strategic value of the Michigan State Police lab report regarding the pry bar and the window screen is no less reasonable.  The report indicates:  "The toolmarks on the window screen frame exhibit similar class characteristics to the submitted 12" pry bar (item #A).  However, due to a lack of sufficient individual matching characteristics, a positive identification cannot be made." (ECF No. 6-32, PageID.2482.)  Petitioner fails to identify any strategic benefit to presenting this evidence to the jury; nor does he identify any prejudicial consequence from the failure to introduce it.  Accordingly, Petitioner has failed to demonstrate that the trial court's determination is contrary to, or an unreasonable application of, *Strickland*.

Although the trial court did not address the argument, Petitioner also claimed trial counsel was constitutionally ineffective for failing to call character witness Ted Westra.  Petitioner's claim is meritless on its face.  Under Michigan Rule of Evidence 405, if counsel had put Petitioner's character in issue by presenting character or reputation evidence, the prosecutor could have explored specific instances of Petitioner's prior conduct, including an extensive criminal history.  *See* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=210913       (last

visited Jan. 2, 2019).[7]   The sentencing transcript indicates that the convictions at issue are petitioner's "10th, 11th, 12th, and 13th" felony convictions.  (ECF No. 6-11, PageID.1415).  Thus, it was not professionally unreasonable for counsel to decline to present character evidence on Petitioner's behalf.

Moreover, Petitioner has failed to demonstrate prejudice resulting from counsel's failure to call Ted Westra.[8]   Petitioner offers nothing to support his speculation that the testimony might have been favorable to him.  "A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."  *United States v. Ashimi*, 932 F.2d 643, 650 (6th Cir. 1991) (footnote omitted).[9]

For the reasons stated above, Petitioner has failed to demonstrate that his trial counsel rendered ineffective assistance; he has failed to demonstrate that the state

---

[7] This Court takes judicial notice of the information provided by a search of the Michigan Department of Corrections (MDOC) Offender Tracking and Information System (OTIS) website with regard to Petitioner.  *See, e.g., Starling v. Bauman*, No. 2:18-cv-153, 2018 WL 4658818, at *2 n.1 (W.D. Mich. Sept. 22, 2018); *Carpenter v. Mich. Dep't of Corr. Time Computation Unit*, No. 1:13-cv-313, 2013 WL 1947249, at *1 n.1 (W.D. Mich. May 9, 2013).

[8] Petitioner's trial attorney listed "Ted Westra c/o KVET" as a potential witness.  (ECF No. 1-3, PageID.479).  "The Kalamazoo Valley Enforcement Team ('KVET'), is 'a police drug unit comprised of various city and county police officers in the Kalamazoo, Michigan area.' "  *Gunn v. Kalamazoo KVET*, No. 1:10-cv-591, 2011 WL 529694, at *1 (W.D. Mich. Jan. 10, 2011) (quoting *United States v. Oliver*, 397 F.3d 369, 373 (6th Cir. 2005)).  Petitioner states that Ted Westra was a "character witness" and that "he could have testified about [Petitioner's] character in the community[.]"  (ECF No. 1-2, PageID.362).

[9] *See also Pillette v. Berghuis*, 408 F. App'x 873, 887 (6th Cir. 2010) ("The salient point is that nobody knows what she would have said.  Speculation cannot suffice to establish the requisite prejudice."); *Gabrion v. United States*, No. 1:15-cv-447, 2018 WL 4786310, at *55 (W.D. Mich. Oct. 4, 2018) (collecting cases).

courts' factual determinations regarding trial counsel's assistance are unreasonable on the record; and, he has failed to show that the state courts' rejections of his ineffective assistance claims are contrary to, or an unreasonable application of, *Strickland*.  Accordingly, he is not entitled to habeas relief.

## IX.    Ineffective Assistance of Appellate Counsel (Habeas Issue IX)

Petitioner complains that his appellate counsel also rendered ineffective assistance.  In part, Petitioner's argument is premised on the opinion of the Michigan Court of Appeals on direct appeal.  That court stated: "We find that defendant has abandoned his claims of ineffective assistance of [trial] counsel, where he failed to adequately brief the merits of his allegations of ineffective assistance of counsel." (Op., ECF No. 6-14, PageID.1625.)   Petitioner blames appellate counsel for that failure.

The five instances of ineffective assistance of trial counsel that appellate counsel purportedly failed to brief are:

> (1) failing to cross-examine the police witnesses regarding the photographic lineup procedures; (2) failing to call the eyewitnesses to testify at the suppression hearing to determine if their identifications were due to improper suggestions by the police; (3) failing to have the eyewitness identification witness, Dr. Fulero, attend the instant trial; (4) failing to object to the trial court's reliance on facts from codefendant's trial in deciding whether to preclude Dr. Fulero from testifying in the instant trial; and (5) failing to request a transcript from codefendant's trial.

(*Id*.) All of these instances were part of appellate counsel's argument that Petitioner's ability to present a defense was hampered by the court's failure to permit the testimony of Dr. Fulero.  Appellate counsel's primary argument was that the trial

-35-

court erred in excluding Fulero's testimony; however, if the appellate court concluded the trial court had not erred, appellate counsel offered the backup argument that trial counsel had failed to properly present the arguments and evidence in support of admitting Dr. Fulero's testimony.  The hearing transcripts in the trial court on Petitioner's motion for new trial reveal that appellate counsel's arguments regarding trial counsel's ineffectiveness were well-developed in the record.

Nonetheless, assuming counsel's presentations of these issues in the appellate brief fell short, and assuming that the shortfall was professionally unreasonable, Petitioner cannot prevail on his ineffective assistance of appellate counsel claim because the Michigan Court of Appeals went on to consider the underlying ineffective assistance of trial counsel claims on the merits and concluded that the claims had no merit.  (Op., ECF No. 6-14, PageID.1625 ("Ultimately, however, we have reviewed each allegation and conclude that defendant failed to establish that trial counsel's performance was deficient or that any deficiency prejudiced the defense.").) Accordingly, Petitioner cannot show any prejudice from appellate counsel's failure to brief the issues to the appellate court's satisfaction.  "Omitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley,* 706 F.3d at 752.

Petitioner's remaining claims that his appellate counsel rendered ineffective assistance are premised on counsel's failure to raise claims that have already been rejected as meritless above.  Accordingly, Petitioner has failed to show that the state courts' rejections of his ineffective assistance of counsel claims are contrary to, or an

unreasonable application of, *Strickland*.  Accordingly, he is not entitled to habeas relief.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Accordingly, I recommend that the Court deny Petitioner a certificate of appealability.

## **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.


Dated:  January 7, 2019                    /s/  Phillip J. Green
                                           PHILLIP J. GREEN
                                           United States Magistrate Judge


## **NOTICE TO PARTIES**

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).